**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **SHANESIA BULLOCK, NEXT FRIEND OF LAMARCUS BROWN JR.,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **CIVIL ACTION NO. 5:25-cv-552 (MTT)** |
| **JOSHUA CHATMAN and WILKINSON COUNTY SCHOOL DISTRICT,** | ) ) ) | |
| **Defendants.** | ) ) ) | |

## ORDER

Defendant Joshua Chatman[1] slammed a door shut on five-year-old Lamarcus

Brown Jr.'s hand when Brown attempted to prematurely leave an in-school suspension

classroom at Wilkinson County Primary School. ECF 1-17 ¶¶ 10–13; ECF 2-1 at 27:10–

28:00. Plaintiff, Shanesia Bullock, the next friend and mother of Lamarcus Brown Jr.,

asserts that Chatman violated Brown's substantive due process right to be free from

excessive corporal punishment and that Wilkinson County School District ("WCSD")

failed to adequately train and supervise paraprofessionals like Chatman. ECF 1-17

¶¶ 14–18. Defendants move to dismiss. ECF 2. For the following reasons, Defendants'

motion (ECF 2) is **GRANTED in part** and **DENIED in part**.

---

[1] The Court notes that Chatman claims he has not been properly served and states he "does not waive his right to assert any [related] defenses by filing this motion and maintains that he should be dismissed pursuant to Fed. R. Civ. P. 12(4) and (5)." ECF 2 at 1 n.1.

## I.  BACKGROUND

The Court takes the following facts from the well-pleaded allegations in the amended complaint, construing all reasonable inferences in the light most favorable to the plaintiff. *See FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011). In addition, when resolving a motion to dismiss, "a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). The Court must construe all ambiguities in a video in the Plaintiff's favor, but "[w]here a video is clear and obviously contradicts the plaintiff's alleged facts, [the Court] accept[s] the video's depiction instead of the complaint's account and view[s] the facts in the light depicted by the video. After all, courts are not required to rely on visible fiction." *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1278 (11th Cir. 2023) (citation modified). The Court thus also takes the following facts from Defendants' Exhibit A, an undisputed video recording of the incident giving rise to the complaint.[2]

Defendant Chatman worked as a paraprofessional at Wilkinson County Primary School. ECF 1-17 ¶ 8. On April 23, 2024, Brown was enrolled as a student at the school. *Id.* ¶ 10. The video shows that Chatman and Brown were alone in a classroom together. ECF 2-1 at 00:20. Brown was seated at a desk, and Chatman instructed him to work. *Id.* at 00:45. After a while, Brown said he wanted to go back, and Chatman told him he had half an hour. *Id.* at 3:05. As the minutes passed, Brown grew increasingly

---

[2] Both parties rely on the video in their briefs. *See* ECF 2 at 2–3; ECF 9 at 2–3.

distracted and upset to the point of tears. *Id.* at 3:16–12:20. Chatman told Brown, "You brought this on yourself." *Id.* at 15:15. Brown said repeatedly, "I want to go home" with increasing volume. *Id.* at 15:45. Chatman said, "If you felt like you wanted to go home, you would've been where you were supposed to when you were in your classroom . . . . But you didn't do that, right?" *Id.* at 16:23. Brown yelled repeatedly again, "I want to go home." *Id.* at 17:19.

Chatman and Brown argued with each other. At one point, Brown said he didn't like his teacher and said she was ugly. *Id.* at 23:10. Chatman said the teacher is nice. *Id.* at 23:20. Brown repeated that she's ugly, and Chatman replied, "You ugly." *Id.* at 23:25. The two went back and forth, calling each other ugly. *Id.* Chatman told Brown he wasn't going anywhere, and Brown resumed screaming that he wanted to go home. *Id.* at 24:45. He stood up from his desk and knocked over his chair. 26:05. Chatman stood too and told Brown to pick up the chair. *Id.* at 26:15. He walked over to Brown and repeated, "Pick the chair up." *Id.* at 26:25. Brown didn't move, so Chatman told him to stand in front of his desk to finish his work. *Id.* at 26:38. Brown yelled that he didn't want to and pointed at Chatman with his middle finger. *Id.* at 26:40. The two again went back and forth, calling each other ugly. *Id.* at 27:10. Brown marched toward the classroom door, and Chatman followed. *Id.* at 27:35.

The video shows that Brown partly opened the classroom door, and Chatman pushed it shut. *Id.* at 27:38. From the time Brown opened the door to the time Chatman shut it, only two seconds passed. *Id.* at 27:38–39. But that was enough time for Brown to stick his hand in the doorframe, and the door slammed shut on Brown's hand. *Id.* at

-3-

27:39. After realizing what had happened, Chatman opened the door and responded to Brown's injuries. *Id.* at 27:40.

## II.  STANDARD

To avoid dismissal pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp.*, 658 F.3d at 1296 (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

### III. DISCUSSION

#### A. Defendant Chatman

Chatman argues that qualified immunity bars Plaintiff's § 1983, substantive due process claim. ECF 2 at 4–11. The doctrine of qualified immunity "offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Scott v. City of Miami*, 139 F.4th 1267, 1274 (11th Cir. 2025) (citation modified). "Although qualified immunity provides government officials with a formidable shield, their entitlement to raise that shield is not automatic." *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018). Rather, "the official bears the initial burden of raising the defense of qualified immunity by proving that he was acting within his authority." *Id*. "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'" *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)). Chatman maintains, and Plaintiff does not dispute, that Chatman acted within his discretionary authority, so the burden shifts to Chatman. ECF 2 at 5–6; *see* ECF 9.

To overcome a qualified immunity defense, a plaintiff must plausibly allege that (1) the facts, viewed in his favor, establish a constitutional violation; and (2) the defendant violated rights that were clearly established at the time of the alleged violation. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019). This two-step analysis may be done in whatever order is deemed most appropriate for the case. *Lewis*, 561 F.3d at 1291 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

Here, qualified immunity bars Plaintiff's claim because the alleged facts, viewed in Plaintiff's favor, do not establish a violation of Brown's substantive due process right to be free from excessive corporal punishment under the Fourteenth Amendment. "Due process 'protects individuals against arbitrary exercises of government power, but only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" *Harris by & through Davis v. Autry*, 2022 WL 392169, at *7 (11th Cir. Feb. 9, 2022) (quoting *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty., Fla.*, 610 F.3d 588, 598 (11th Cir. 2010)). "To be arbitrary in the constitutional sense, an executive abuse of power must 'shock[ ] the conscience.'" *T.W.*, 610 F.3d at 598 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). "Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* (citation modified). Significantly, "'the Fourteenth Amendment is not a 'font of tort law' that can be used, through section 1983, to convert state tort claims into federal causes of action.'" *Id.* (quoting *Neal ex rel. Neal v. Fulton County Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000)). "[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1375–76 (11th Cir. 2002) (quoting *County of Sacramento,* 523 U.S. at 849).

"[E]xcessive corporal punishment, at least where not administered in conformity with a valid policy authorizing corporal punishment . . . may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior." *Hines v. Jefferson*, 795 F. App'x 707, 715 (11th Cir. 2019) (quoting *T.W.*, 610 F.3d at 598). "The first step in this inquiry is to determine whether the defendant's

conduct constitutes corporal punishment." *Id.* (citing *Neal*, 229 F.3d at 1072). "In making this determination, the key inquiry is not what form the use of force takes but whether the use of force is related to the student's misconduct at school and for the purpose of discipline." *Id.* (citation modified); *T.W.*, 610 F.3d at 598–99. The Eleventh Circuit has "found that a school official engaged in corporal punishment where the circumstances indicated that the school official's use of physical force was intended as punishment." *Hines*, 795 F. App'x at 715 (citing *Neal*, 229 F.3d at 1072–73).

Construing all facts in Plaintiff's favor, the amended complaint fails to plausibly allege that Chatman's "use of physical force was intended as punishment" because the amended complaint fails to plausibly allege that Chatman intended to slam the door on Brown's hand at all. *Id.*; *see* ECF 1-17. The amended complaint does not allege, nor does the video show, that Chatman saw Brown's hand in the door and slammed it anyway. *See* ECF 1-17; ECF 2-1 at 27:10–28:00. It does not allege, nor does the video show, that Chatman made statements suggesting intent to physically punish Brown by slamming the door on his hand. *See* ECF 1-17; ECF 2-1. Instead, the video recording shows Brown started to open the door, Chatman shut it, and Brown's hand happened to be inside. ECF 2-1 at 27:38–39. The entire incident occurred in two seconds. *Id.* Because nothing suggests Chatman intended to slam the door on Brown's hand at all, much less to punish Brown, the amended complaint fails to plausibly allege corporal punishment.

Plaintiff argues that Chatman shut the door to keep Brown inside the classroom for in-school suspension, showing disciplinary purpose. ECF 9 at 7. To be sure, keeping Brown in the classroom served a disciplinary purpose, and shutting the classroom door

-7-

to prevent Brown from leaving furthered that purpose. But the Court cannot agree that Chatman intended to punish Brown by slamming the door on Brown's hand when nothing in the amended complaint or video suggests this was anything other than an accident. Nor is it enough that Chatman and Brown called each other names and that Brown gave Chatman the middle finger. ECF 2-1 at 26:40–27:35. Though there may have been a motive for Chatman to punish Brown, and though Chatman's engagement with Brown was unprofessional, the video recording does not suggest that Brown intended to physically injure or punish Brown by slamming the door on his hand. Again, only the "most egregious official conduct can be said to be arbitrary in the constitutional sense," *Harris*, 2022 WL 392169, at *7 (citation modified), and "the Fourteenth Amendment is not a font of tort law," *T.W.*, 610 F.3d at 598 (citation modified). Accidentally, or even negligently, or even grossly negligently, slamming a door on a student's hand does not rise to the level of "most egregious official conduct" constituting a substantive due process violation. Consequently, the amended complaint fails to allege a constitutional violation.

Plaintiff has also failed to show that clearly established law put Chatman on notice that his conduct violated Brown's constitutional rights. Plaintiff cites no cases, nor has the Court found any, that would have put Chatman on notice that slamming a door on a student's hand, absent intent to injure the student, amounts to a constitutional violation. Plaintiff argues the right to be free from excessive corporal punishment in general is clearly established, so Chatman had fair and clear warning that his conduct was unlawful. ECF 9 at 8. But Plaintiff has not plausibly alleged that Chatman violated

-8-

Brown's substantive due process rights at all, much less that Chatman's conduct constituted a clearly established constitutional violation.

Accordingly, Chatman is entitled to qualified immunity. Plaintiff's substantive due process claim under § 1983 is **DISMISSED without prejudice**.

## B. Wilkinson County School District

To allege § 1983 liability against WCSD, the plaintiff must allege a constitutional tort resulted "from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." *Hill v. Cundiff*, 797 F.3d 948, 977 (11th Cir. 2015) (quoting *Denno v. Sch. Bd. of Volusia Cty., Fla.,* 218 F.3d 1267, 1276 (11th Cir. 2000)). In other words, Plaintiff must plausibly allege a "persistent and widespread practice" because "normally random acts or isolated incidents are insufficient to establish a custom." *Denno*, 218 F.3d at 1277 (citation modified).

The Court first observes, as explained above, the amended complaint fails to plausibly allege a constitutional violation at all. Consequently, Plaintiff has not alleged § 1983 liability against WCSD. But even if the amended complaint had plausibly alleged a substantive due process violation, Plaintiff has not shown that WCSD had a policy or custom that resulted in it. Plaintiff argues that WCSD had a "custom of allowing ineffectively trained and supervised staff to discipline and supervise students." ECF 9 at 9. Plaintiff argues that because Chatman was alone with Brown on April 23, 2024, the complaint plausibly alleges WCSD had a custom or policy of leaving inexperienced staff alone with students. ECF 9 at 10. But without more than a single instance, the amended

complaint fails to plausibly allege a persistent and widespread practice assuming the force of law.[3]

Accordingly, Plaintiff's *Monell* claim against WCSD is **DISMISSED.**

### C. State Law Claims

Plaintiff argues his state law claims should not be subject to dismissal, but it is difficult to discern what, if any, state law claims Plaintiff asserts. *See* ECF 9 at 10–13; ECF 1-17. Defendants argue that, if the Court should discern any state law claims, the Court should exercise its supplemental jurisdiction and dismiss any state law claims asserted. ECF 11 at 7 n.8. Having dismissed Plaintiff's federal claims, however, the Court will remand this case for further proceedings on any state law claims that may remain.

Federal courts have limited jurisdiction and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A district court may appropriately discontinue its exercise of supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(2). "The district court . . . must weigh . . . at every stage of the litigation, whether to dismiss the supplemental claims." *Ameritox, Ltd. v. Millennium Labors, Inc.*, 803 F.3d 518, 532 (11th Cir. 2015) (citation modified). "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF*

---

[3] The complaint also states that WCSD failed to properly train Chatman. *See* ECF 1-17 ¶ 18. To the extent Plaintiff attempts to assert a failure to train claim, it also fails. The amended complaint does not plausibly allege a pattern of similar constitutional violations by untrained employees showing deliberate indifference. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." (citation modified)).

*Bio, Inc.*, 556 U.S. 635, 639 (2009). "Indeed, if the federal claims are dismissed prior to trial, [the Supreme Court] strongly encourages or even requires dismissal of the state claims." *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Defendants argue the Court should continue exercising supplemental jurisdiction because otherwise, the parties "would have wasted several months to be placed largely in the same procedural position they were in before the Court's ruling." ECF 11 at 7 n.8. But Plaintiff chose to begin this case in state court, and the Court, in its discretion, will allow Plaintiff to pursue any potentially remaining state law claims in the forum Plaintiff chose.

Accordingly, the Court declines to exercise supplemental jurisdiction over any potentially remaining state law claims, and those claims are **REMANDED**.

## IV. CONCLUSION

Defendants' motion to dismiss (ECF 2) is **GRANTED in part** and **DENIED in part**.

Qualified immunity bars Plaintiff's Fourteenth Amendment substantive due process claim against Defendant Chatman, and this claim is **DISMISSED without prejudice**.

Plaintiff's *Monell* claim against WCSD is **DISMISSED without prejudice**.

Defendants' motion to stay proceedings (ECF 4) is **DENIED** as moot.

Plaintiff's remaining state law claims are **REMANDED**.

**SO ORDERED**, this 10th day of June, 2026.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
